**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

ABDUL WAHID,
    *Defendant-Appellant.*

No. 09-50036

D.C. No.
08-CR-0093 GW

OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
February 10, 2010—Pasadena, California

Filed August 10, 2010

Before: Barry G. Silverman and Sidney R. Thomas,
Circuit Judges, and Jeremy Fogel, District Judge*

Opinion by Judge Fogel

---

*The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

11375

## COUNSEL

Benjamin L. Coleman and Ethan A. Balogh, Coleman & Balogh LLP, San Diego, California, for the defendant-appellant.

George S. Cardona, Acting United States Attorney; Christine C. Ewell, Assistant United States Attorney, Criminal Division; and Janet C. Hudson, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

## OPINION

FOGEL, District Judge:

On March 24, 2008, Appellant Abdul Wahid pled guilty to three counts of mail fraud (18 U.S.C. § 1341), one count of theft of government property (18 U.S.C. § 641), one count of

aggravated identity theft (18 U.S.C. § 1028A), and five counts of tax evasion (26 U.S.C. § 7201). He now appeals his sentence, presenting two separate issues. First, he argues that the district court failed to recognize that it had discretion to reduce the sentence it imposed for mail fraud in light of the two-year mandatory sentence for aggravated identity theft under 18 U.S.C. § 1028A. Second, he claims that the district court erred in assessing criminal history points under U.S.S.G. § 4A1.2 for his prior misdemeanor convictions. Although we vacate the judgment and remand to permit the district court to correct a clerical error, we affirm the sentence.

## I.  BACKGROUND

### A.  Criminal Conduct Charged in the Information

From 2000 to 2007, Wahid owned and operated a tax preparation business called Global Accounting and Tax Services, Inc. Although he is not a certified public accountant ("CPA"), he held himself out as such.

### 1.  Mail Fraud

Counts One through Three of the information alleged mail fraud. Wahid operated several other companies in addition to Global Accounting and Tax Services, Inc., including one called Internal Recovery Systems (doing business as "IRS") and others doing business as "EED," "BOE," and "FTB" (all of which are acronyms for tax collecting agencies in California). Wahid defrauded his clients by preparing two sets of tax returns for each client. One set of returns, which Wahid showed to his clients, indicated that taxes were owed. Wahid directed his clients to make out checks to "IRS" or another applicable acronym, which he then deposited into one of his business accounts. The second set of returns indicated that the clients had no tax liability or were owed a refund. Wahid forged his clients' signatures and provided these returns to the appropriate tax collection agencies. In a variation on this

scheme, Wahid falsely told clients that he had paid their tax liability directly and requested reimbursement. The government identified more than 150 victims of these schemes.

### 2. Theft of Government Property

Count Four alleged theft of government property. From 2001 to 2006, Wahid filed false tax returns using Social Security Numbers assigned to other people. These returns indicated that the individuals were owed tax refunds and requested that the refunds be sent to Wahid's address. Wahid deposited the refunds into his personal accounts. For example, Wahid received a refund of $14,429 using the Social Security Number of an individual with the initials "S.K.M." The real S.K.M. was a friend of Wahid who was not currently living in the United States.

### 3. Aggravated Identity Theft

Count Five alleged aggravated identity theft. Aggravated identity theft involves knowingly transferring, possessing, or using the identification of another person in connection with the commission of certain enumerated felonies. 18 U.S.C. § 1028A. Theft of government property is such a felony. 18 U.S.C. § 1028A(c)(1). As described above, Wahid knowingly used S.K.M.'s Social Security Number in the commission of Count Four.

### 4. Tax Evasion

Counts Six through Ten alleged tax evasion. Wahid did not file tax returns for his own income from 2002 to 2006. The Internal Revenue Service determined that Wahid's taxable income during this period was $2,921,010.

### B. Continuing Criminal Activity While Released on Bond

Following his arrest, Wahid was released on a $5,000 unsecured appearance bond. While on pretrial release, Wahid mis-

appropriated three additional checks using the same scheme described in connection with the mail fraud allegations. Wahid also filed false tax returns for his wife for 2004 and 2005 and used a Taxpayer Identification Number that belonged to another person.

## C. Sentencing

The district court sentenced Wahid to 132 months in prison. It also ordered Wahid to pay restitution in the amount of $1,280,617.33 and imposed a special assessment of $1,000.

### 1. Offense Level Calculation

The district court grouped Counts One through Five (mail fraud, theft of government property, and aggravated identity theft) and Counts Six through Ten (tax evasion), finding that the counts involved a common scheme or plan under U.S.S.G. §§ 1.B1.3(a)(2), 3D1.2(c), and 3D1.2(d). It selected a base offense level of seven pursuant to U.S.S.G. § 2B1.1(a)(1)(B) based upon Wahid's conviction under 28 U.S.C. § 1341. Sixteen levels were added because the total loss was between $1,000,000 and $2,500,000. U.S.S.G. § 2B1.1(b)(1). Another four levels were added because there were between fifty and 250 victims. U.S.S.G. § 1B1.1(b)(2)(B). Finally, two more levels were added because Wahid abused a position of trust as a tax preparer and abused a special skill in holding himself out as a CPA. U.S.S.G. § 3B1.3. The government initially recommended a three-point deduction for acceptance of responsibility, U.S.S.G. § 3E1.1, but it withdrew that recommendation in light of Wahid's continuing criminal conduct while on pretrial release. Accordingly, Wahid's total offense level was 29.

### 2. Criminal History Category

The presentence report ("PSR") placed Wahid in criminal history category III. One point reflected Wahid's conviction

under Cal. Veh. Code § 14601.1(a) for driving on a suspended license on March 23, 1999. According to court documents, Wahid waived his right to counsel, pled nolo contendere, and was sentenced to three years of probation and fifteen days in jail. A second point reflected Wahid's conviction under Cal. Veh. Code. §§ 14610(a)(1) and 12500(a) for displaying a fraudulent license and driving without a license, respectively, on March 14, 2006. Wahid was represented by counsel in connection with that case, for which he was sentenced to two years probation and one day in jail. Two additional points were added because Wahid committed the instant offenses while on probation. U.S.S.G. § 4A1.1(d).

### 3.    Recommended Sentence

With an offense level of 29 and a criminal history category of III, Wahid's guideline sentence was 108 to 135 months. However, a conviction for aggravated identity theft requires the imposition of a two-year consecutive sentence. *See* 18 U.S.C. §§ 1028A(a)(1), (b)(2), and (b)(3). Accordingly, the final recommended sentence was 132 to 159 months.

### 4.    Sentencing Hearing

At his sentencing hearing, Wahid argued that his criminal history category over-represented the seriousness of his criminal record. The district court rejected Wahid's argument, pointing out that Wahid's criminal history involved a failure to tell the truth to authorities, a fact that was relevant to the instant offenses. Wahid also argued that his overall offense level should be reduced because his plea agreement saved the time and expense of a trial. The government asserted that Wahid would have been charged with additional offenses had he not agreed to plead guilty. The district court rejected Wahid's argument and sentenced Wahid at the low end of the guideline range.

## II.  UNITED STATES V. VIDAL-REYES

Wahid first contends that the district court failed to recognize that it had discretion to reduce his sentences for "nonpredicate" felonies in light of the mandatory two-year sentence imposed by Section 1028A. He bases his argument on *United States v. Vidal-Reyes*, 562 F.3d 43 (1st Cir. 2009), a First Circuit decision published while the instant appeal was pending.[1]

## A.  Standards of Review

Examining this issue requires two separate inquiries. The first involves the statutory interpretation of 18 U.S.C. § 1028A ("Section 1028A"). In order to determine whether the district court erred by not considering the extent of its discretion to reduce Wahid's overall sentence under Section 1028A, we first must determine whether the statute permits the court to exercise such discretion at all. Issues of statutory interpretation are reviewed *de novo*. *United States v. Burkholder*, 590 F.3d 1071, 1074 (9th Cir. 2010).

The second inquiry involves review of the district court's guideline calculation. Wahid argues that he is entitled to *de novo* review because he sought and was denied a downward departure by the district court. However, where a defendant did not request a *particular* downward departure at the time of sentencing, the district court's failure to grant that particular departure is reviewed for plain error. *United States v. Castillo-Casiano*, 198 F.3d 787, 789 (9th Cir. 1999) (citing *United States v. Johnson*, 520 U.S. 461 (1997) and *United States v. Keys*, 133 F.3d 1282 (9th Cir. 1998) (en banc)) (finding that the plain error rule applies if the defendant did not at the time of sentencing request the downward departure in

---

[1]Criminal defendants may take advantage of new rules announced while their appeals are pending. *United States v. Castillo-Casiano*, 198 F.3d 787, 789-90 (9th Cir. 1999).

question, even if the law foreclosed the departure in question at the time of the sentencing). Although he did seek a downward departure in the district court, Wahid did not make the argument he makes here. Accordingly, we review the guideline calculation for plain error.

## B.    Statutory Interpretation

**[1]** Wahid asks us to adopt the holding of the First Circuit in *Vidal-Reyes*, 562 F.3d. at 50-51, which distinguished between "predicate" and "non-predicate" offenses for purposes of applying the mandatory consecutive sentence provision of Section 1028A. *Vidal-Reyes* holds that Section 1028A requires a district court to impose a two-year sentence consecutive to any other term of imprisonment and may not reduce the sentence for a "predicate" felony to offset the consecutive sentence, but it also holds that a district court does have discretion to reduce the sentence for a "non-predicate" felony for that purpose. *Id.* We agree.

**[2]** Although the Sentencing Guidelines no longer are mandatory following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005)*, Booker* does not permit district courts to impose a lower sentence in place of a sentence that is required by statute. *See United States v. Dare*, 425 F.3d 634, 643 (9th Cir. 2005); *accord United States v. Rodriguez*, 527 F.3d 221, 230 (1st Cir. 2008) (holding that a district court's discretion may be limited by "an unambiguous congressional directive"). Section 1028A contains such a directive (emphasis added):

> (a)(1) . . . Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person *shall*, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

(b)(2) . . . [N]o term of imprisonment imposed on a person under this section shall run concurrently with any other term of imprisonment imposed on the person *under any other provision of law*, including any term of imprisonment imposed for the felony during which the means of identification was transferred, possessed, or used.

In addition, Section 1028A requires that (emphasis added):

(b)(3) . . . [I]n determining any term of imprisonment to be imposed for *the felony during which the means of identification was transferred, possessed, or used,* a court shall not in any way reduce the term to be imposed for such crime so as to compensate for, or otherwise take into account, any separate term of imprisonment imposed or to be imposed for a violation of this section.

**[3]** The phrase "the felony during which the means of identification was transferred, possessed, or used," which appears in both 18 U.S.C. § 1028A(b)(2) and § 1028(b)(3), refers to the "felony violation enumerated in subsection (c)" of the statute, as referenced in 18 U.S.C. § 1028A(a)(1). These enumerated felony violations are "predicate" felonies for purposes of Section 1028A. Section 641, theft of government property, is one of the enumerated predicate felonies. 18 U.S.C.§ 1028A(c)(1). The statute draws a clear distinction between predicate and non-predicate felonies for some — but not all — purposes.

The mandatory two-year term must be consecutive to a sentence imposed "under any other provision of law, including any term of imprisonment imposed for the [predicate felony.]" 18 U.S.C. § 1028A(b)(2). When the drafters intended to refer to sentences for both predicate and non-predicate felonies, they referred to sentences under "any other provision of law" and were careful to specify that this included sentences

for the predicate felony. However, when limiting a district court's discretion to reduce other sentences to compensate for the mandatory two-year term, the drafters referred *only* to the sentences for predicate felonies rather than for sentences under "any other provision of law." *See* 18 U.S.C. § 1028A(b)(3).

**[4]** The statutory language is clear. While a district court may not reduce the sentence of a *predicate* felony to compensate for the mandatory two-year consecutive term, it may exercise its discretion to reduce a sentence for a *non-predicate* felony. "This plain meaning is conclusive, unless 'the literal application of a statute . . . produces a result demonstrably at odds with the intentions of its drafters.' " *United States v. Flores-Garcia*, 198 F.3d 1119, 1123 (9th Cir. 2000) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). Because the government has not provided any evidence of legislative intent to the contrary, "we abide by the principle that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *APL Co. Pte., Ltd. v. UK Aerosols Ltd.*, 582 F.3d 947, 952 (9th Cir. 2009) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) (internal marks omitted).

## C. Plain Error Review of the District Court's Guideline Calculation

"Plain error occurs where there is (1) error, (2) that is plain, and (3) the plain error affects substantial rights." *Castillo-Casiano*, 198 F.3d at 790 (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). "Where these three conditions are met, we have discretion to correct the error, but only in cases where the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 469-70 (1997)).

### 1. Error

Error is "[d]eviation from a legal rule . . . unless the rule has been waived." *Olano*, 507 U.S. at 733-735. Wahid contends that the district court erred because it did not understand that it had discretion to reduce the sentences related to Counts One through Three because these counts, which charged him with wire fraud, are non-predicate felonies for purposes of Section 1028A. He points out that the district court grouped Counts One through Five. Wahid does not argue that the grouping was error in and of itself under U.S.S.G. §§ 3D1.2(c) (requiring grouping of counts if they embody conduct that was treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts) or 3D1.2(d) (requiring grouping of counts if they involve substantially the same harm). Rather, he contends that the grouping is evidence that the court did not understand the distinction between predicate and non-predicate felonies.

### 2. Error That is Plain

**[5]** "Plain error, as we understand that term, is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir. 1997); *see also United States v. Frady*, 456 U.S. 152, 163 (1982) (noting that error is plain only if the trial judge is "derelict in countenancing it"). Our analysis for plain error differs depending on whether the state of the law was unclear at the time of the trial or was settled at the time of trial and clearly contrary to the law at the time of the appeal. *Turman*, 122 F.3d at 1170. "When the state of the law is unclear at trial and only becomes clear as a result of later authority", plain error "means error plain at the time the district court made the alleged mistake." *Id.* However, "[w]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that the error be 'plain' at the time of appellate consideration." *Id.* (citing *Johnson*, 520 U.S. at 468).

Wahid does not attempt to show that the law at the time of his sentencing was settled and clearly contrary to our interpretation of Section 1028A. Accordingly, we examine the district court's sentencing decision as of the time the decision was made. Wahid claims that the district court's comments at the sentencing hearing show plainly that the district court believed that it did not have discretion to reduce his sentence for the non-predicate counts. He points to the district judge's comment that "even if I were to take the minimum under the guidelines, it's 108 months, plus 24 months, which is 132 months. So how am I suppose to get around that?" However, immediately following that statement, the district judge said, "Even though I understand I have discretion to sentence outside the guidelines range, I have to have a basis for doing that. . . . If I were trying to justify it, I can't see how I can justify going below the term." The court continued, "I have discretion, but obviously to exercise discretion I have to have a basis." Finally, the district court observed:

> "I'm not in this particular situation going to be persuaded that he somehow should not be sentenced under the guidelines in this particular situation. The crimes that he has committed are so numerous to so many victims that even though he's only charged with the number that's contained in the indictment, it cannot be argued that there are not many more."

In *Vidal-Reyes*, the district court stated explicitly that it wanted to reduce the sentence for the defendant's non-predicate felonies but believed that it could not under the mandatory provision of Section 1028A. 562 F.3d at 47-48. Similarly, in *United States v. Mendoza*, 121 F.3d 510 (9th Cir. 1997), cited in *Castillo-Casiano* as an example of plain error, the district court stated specifically (and incorrectly) that it believed it did not have discretion with respect to a particular issue. *Mendoza*, 121 F.3d at 512.

**[6]** Even with the benefit of hindsight, we cannot say that the district court plainly erred in considering its discretion to reduce the sentences for the non-predicate felonies. The district court made several statements indicating that it understood it had discretion to impose a sentence outside of the guidelines. Because the district court recognized that it had discretion but chose not to exercise it, there was no plain error. As the court noted in *Vidal-Reyes*, "a new proceeding is needed where the district court wrongly thought it lacked legal power to depart from sentencing guidelines, but not where it simply chose not to exercise this authority." 562 F.3d at 56 (internal citations and marks omitted).[2]

## III. CALCULATION OF THE CRIMINAL HISTORY CATEGORY

Wahid argues that his previous convictions should not have resulted in criminal history points and that he should have been placed in criminal history category I. Specifically, Wahid contends that his conviction for driving on a suspended license should not have counted because it was an uncounseled conviction for which he was sentenced to time in jail. He also contends that two other convictions for which he was sentenced simultaneously — driving without a license and displaying a fraudulent license — should not have counted because they involved minor traffic offenses.

### A. Standard of Review

The district court's calculation of Wahid's criminal history category is reviewed *de novo*. Although his argument at sentencing was based on U.S.S.G. § 4A1.3(b)(1) and his current argument is based on U.S.S.G. § 4A1.2, Wahid's basic claim remains the same: his prior convictions are not serious enough

---

[2]Because we conclude that there was no plain error, we do not reach the question of whether the disputed error affected Wahid's substantial rights. *Cf. Olano*, 507 U.S. at 734.

to warrant his placement in criminal history category III. *See United States v. Guzman-Padilla*, 573 F.3d 865, 877 n.1 (9th Cir. 2009) (holding that claims, not arguments are preserved on appeal).

## B.   The Uncounseled Conviction

Wahid argues that his 1999 conviction under Cal. Veh. Code § 14601.1(a) should not have counted because he was uncounseled and sentenced to serve jail time. The PSR reflects that "[a]ccording to court documentation, the defendant waived his right to counsel and pleaded nolo contendere." Wahid argues that counting this conviction was unconstitutional and contrary to U.S.S.G. § 4A1.2.

### 1.   The Constitutional Issue

**[7]**  Wahid contends that the conviction should not count in light of the Sixth Amendment's guarantee of the right to counsel in criminal cases in which jail time may be imposed. *See Scott v. Illinois*, 440 U.S. 367, 373 (U.S. 1979) (holding that precedent "warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.") However, once the government establishes the fact of a conviction, the burden rests on the defendant to show that the conviction was unconstitutional. *United States v. Newman*, 912 F.2d 1119, 1121 (9th Cir. 1990).[3] Wahid has not presented any evidence that he did not make a knowing and intentional waiver of his right to counsel or that his conviction otherwise was unconstitutional.

---

[3]Our decision in *Newman* was based on commentary to Note 6 to U.S.S.G. § 4A1.2. That comment was amended in 1993. In *United States v. Kaneakua,* 105 F.3d 463, 467 (9th Cir. 1997), we held that the amendment to Note 6 was intended not to reallocate the burden of proof related to a conviction but to prevent a collateral attack on a prior sentence at a subsequent sentencing hearing. *Id.*

## 2. U.S.S.G. § 4A1.2

**[8]** Wahid contends that the Commentary to U.S.S.G. § 4A1.2 precludes the district court from including in its criminal history calculation any uncounseled misdemeanor sentence for which imprisonment was imposed. The relevant language reads:

> "Prior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed."

U.S.S.G. § 4A1.2 cmt. background. The Commentary is specific in saying that the criminal history calculation *should* include uncounseled misdemeanor convictions where imprisonment was *not* imposed. Wahid argues that under the doctrine of *expressio unius est exclusio alterius* ("*expressio unius*"), the commentators must have intended to exclude uncounseled misdemeanor convictions for which imprisonment *was* imposed.

**[9]** Wahid points out that the Commentary has been amended to exclude certain convictions even if such convictions were not obtained in violation of the Constitution. Before November 1, 1990, the Commentary provided that "if to count an uncounseled misdemeanor conviction would result in the imposition of a sentence under circumstances that would violate the United States Constitution, then such conviction shall not be counted in the criminal history score." *See United States v. Niven*, 952 F.2d 289, 292 (9th Cir. 1991). Wahid is correct that the amendment to the Commentary does appear to broaden the category of convictions that should not be counted in determining a criminal history score. However, taken to its logical extreme, Wahid's interpretation of the Commentary also would exclude *counseled* misdemeanor sentences for which imprisonment was *not* imposed. We decline Wahid's invitation to reach such a result.

## C.  Minor Traffic Violations

Wahid also argues that he should not have been assessed a criminal history point for his 2006 convictions under Cal. Veh. Code §§ 12500(a) and 14610(a)(1), because the convictions are for minor traffic offenses as defined by U.S.S.G. § 4A1.2(c)(2). Wahid was sentenced simultaneously for violating these two statutes and was ordered to serve two years of probation and one day in jail.

U.S.S.G. § 4A1.2(c)(1) lists misdemeanor offenses that are to be counted in the criminal history score if either (A) the sentence included more than one year of probation or imprisonment for at least thirty days or (B) the prior offense was similar to the instant offense. An offense that is not listed may be counted if it is similar to an offense that is listed. U.S.S.G. § 4A1.2(c)(2) lists offenses that never are to be counted in the calculation of the criminal history score, including minor traffic infractions. Offenses not listed also may be excluded if they are similar to an offense that is listed.

Cal. Veh. Code § 12500(a) provides that "[a] person may not drive a motor vehicle upon a highway, unless the person then holds a valid driver's license issued under this code, except those persons who are expressly exempted under this code." The PSR notes that Wahid was convicted of "driving w/o license" and sentenced to two years of probation and one day in jail. U.S.S.G. § 4A1.2(c)(1) specifically lists "[d]riving without a license or with a revoked or suspended license" as a conviction that should be counted if the sentence imposed was more than one year of probation. Given the explicit language of U.S.S.G. § 4A1.2(c)(1) and the sentence of two years of probation, Wahid properly was assessed a criminal history point for this prior sentence.

Nonetheless, Wahid argues that Section 14610(a)(1) — entitled "unlawful use of license" — is a "minor traffic infraction" under U.S.S.G. § 4A1.2(c)(2). Based on that argument,

he contends that no criminal history points should be assessed with respect to either Cal. Veh. Code § 12500(a) or § 14610(a)(1) because he claims that it is possible that he was sentenced to two years of probation only for his violation of Cal. Veh. Code § 14610(a)(1) and that the court cannot determine which offense resulted in which aspect of his sentence. Even accepting Wahid's argument that the violation of Cal. Veh. Code § 14610(a)(1) is similar to a minor traffic infraction for purposes of U.S.S.G. § 4A1.2(c)(2), it is clear from the record that he was sentenced simultaneously for the two offenses.

**[10]** Pursuant to U.S.S.G. § 4A1.2(a)(2), "[i]f there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." The PSR indicates that the arrests for Cal. Veh. Code §§ 12500(a) and 14610(a)(1) occurred on the same day (March 14, 2006), so an intervening arrest was unlikely. The PSR also indicates that the sentences were imposed on the same day, July 6, 2006. In light of this uncontroverted evidence, Wahid's convictions under §§ 12500(a) and 14610(a)(1) do not count separately and should be considered a single sentence.

**[11]** Given the express language of U.S.S.G. § 4A1.2(c)(1), Wahid's conviction under Cal. Veh. Code § 12500(a) for driving without a license properly was counted toward his criminal history score if the sentence included more than one year of probation. Because the sentence for convictions under Cal. Veh. Code §§ 12500(a) and 14610(a)(1) is considered a single sentence, it is immaterial whether two years of probation was imposed with respect to both or only one of the convictions.

## IV.  CONCLUSION

**[12]** We conclude that the district court did not commit plain error because it recognized that it had discretion to

reduce Wahid's sentence and chose not to exercise that discretion. We also conclude that the district court did not err when it included Wahid's previous convictions in calculating Wahid's criminal history category. However, because the judgment erroneously reflects that Wahid was convicted of three counts of wire fraud pursuant to 18 U.S.C. § 1343 rather than three counts of mail fraud pursuant to 18 U.S.C. § 1341 as charged in the information and as reflected in the plea and PSR, we vacate the judgment and remand for the limited purpose of permitting the district court to correct the judgment.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.